## 46465. SUMTER COUNTY v. PRITCHETT et al.

EBERHARDT, Judge. Ulmont Pritchett and his wife, Nadine, brought suit against Sumter County and against the administrator of the estate of Ben H. Strickland, Jr., seeking to recover damages for the alleged wrongful death of their son, Johnny Pritchett. It is alleged that the death resulted from a collision between a driver education car of which Johnny Pritchett was an occupant and a car driven by Ben H. Strickland, Jr., a principal of Union High School which was operated by the Sumter County Board of Education as an agency of Sumter County; that Strickland was within the scope of his authority when driving the car; and that the collision resulted from his negligence.

Sumter County moved to dismiss and for summary judgment on the grounds that Strickland, the principal of the

school, was not, at the time of the collision, engaged in the driver education program, was not acting as a driver education instructor, and was not using the automobile with the permission of the school board. Several other grounds were urged, but are not referred to in the enumerations of error or in the brief and are deemed to have been abandoned.

Relative to the grounds urged on appeal, the evidence submitted by the county included a contract between Oxford Motor Company and the county, by its school superintendent, whereby Oxford loaned a 1968 Pontiac automobile to be used at Union High School in the driver education program and in which the county schools agreed to "2. Accept responsibility for custody of automobile furnished and restrict its use to Driver Education Program. 3. Keep automobile adequately garaged when not in use to prevent the possibility of theft or unauthorized use." The contract was on a form prepared and supplied by the State Department of Education. Also in evidence was a copy of a letter from the county school superintendent addressed to Mr. Ben Strickland, Leslie, Georgia (where Union High School was located) dated August 16, 1967, informing him that Oxford Motor Company had complained of misuse of the driver education car assigned to that school the previous year, and that while Oxford was willing to supply an automobile for the coming school year, it would have to be understood that it would be used for driver education purposes only, and that "if we are to continue the driver education program, we must adhere strictly to Mr. Oxford's wishes and to board policy concerning the use of these vehicles."

Also submitted was a copy of a general letter addressed to all school principals of the county schools relative to board policy on the use of driver education vehicles, dated December 9, 1966, in which it was asserted that "Driver Education cars are to be used for driver education purposes only and during school hours."

A deposition of Mr. Ed Bailey, the county school superin-

tendent, was tendered, in which he testified, identifying the contract with Oxford Motor Company, the letter written to Strickland, the letter addressed to all school principals, and asserting that in addition to this he had personally talked with Strickland, admonishing him that the provisions of the contract and of the board policy must be adhered to strictly, and that the car was not to be driven at any time for any purpose other than instructions to students in driver education.

The collision occurred December 10, 1967, in Worth County. Strickland had gone from Leslie to Albany to participate in a drawing of pairings for a Christmas basketball tournament. It was a Sunday afternoon. Strickland was not the driver education instructor at Union High School, but the principal. The driving instructor was Claude Frazier.

The car was to be used only during class periods of the school day when students could take the instruction and when Frazier could give it. At other times it was housed in a canning plant that had been converted into a garage by the school board, or at the home of principal Strickland, who lived in a house on the school grounds. Bailey testified that he knew of no other uses made of the vehicle until the occasion of this collision.

It is stipulated by counsel for all parties that objection was made on behalf of the plaintiffs to the admission of the two letters and the testimony of Mr. Bailey concerning conversations with Mr. Strickland on the ground that these had been communications by a party at interest with one since deceased, and that under *Code* § 38-1603 (1, 3, 4) these should be excluded. There was no objection by or on behalf of the co-defendant administrator. The court sustained the objection to the evidence, ruled it out, and denied the motion to dismiss and for summary judgment. Obtaining a certificate for review, Sumter County appeals. *Held:*

1. The "dead man's statute," found in the several numbered exceptions to the general rule of *Code* § 38-1603 as to

competency of witnesses, must be strictly construed. "'Statutes making exceptions to general rules must be strictly construed,' (*Williams v. Seaboard A. L. R. Co.*, 33 Ga. App. 164, 165 (125 SE 769)), and should be given a narrow construction. *Dalton Brick &c. Co. v. Huiet,* 102 Ga. App. 221, 224 (115 SE2d 748)." *Faust v. Buchanan,* 123 Ga. App. 15, 18 (179 SE2d 294). The exceptions are not to be extended beyond their explicit terms. Indeed, the statute provides at the end thereof that "There shall be no other exceptions allowed under the foregoing paragraphs." "[T]he statute itself, in plain and positive terms, forbids any construction which would extend it beyond its letter." *Woodson v. Jones,* 92 Ga. 662, 664 (19 SE 60). "That this statute is not to be extended by construction so as to embrace cases not strictly within its letter, is made clear by the Act itself. . ." *Ullman v. Brunswick Title &c. Co.,* 96 Ga. 625, 628 (24 SE 409). "This court is thoroughly committed to the proposition that the Act of 1889 and the subsequent Acts amendatory thereof, the provisions of which have been embodied in Civil Code § 5269 [now § 38-1603], are to be literally construed, and nothing will be added to or taken from them by judicial construction." *Hendrick v. Daniel,* 119 Ga. 358, 360 (46 SE 438), followed in *Hawes v. Glover,* 126 Ga. 305, 315 (55 SE 62). "[T]his court has held that it is safer to adhere to the plain letter of its terms, and thus avoid the confusion which arose from the attempted liberal construction of the evidence Act of 1866." *McLendon v. Baldwin,* 166 Ga. 794, 796 (144 SE 271). To a like effect, *Eley v. Reese,* 171 Ga. 212 (2 a) (155 SE 24).

2. *Code* § 38-1603 "deals with the *competency* of a witness to testify against a deceased, and not with the question as to whether or not such evidence was admissible." *Prothro v. Walker,* 202 Ga. 71 (2) (42 SE2d 114).

Appellant cites *Dye v. Richards,* 210 Ga. 601, 604 (81 SE2d 820) and *Massachusetts Bonding &c. Co. v. Bins & Equipment Co.,* 100 Ga App. 847, 851 (112 SE2d 626) in which language is found indicating that the Code section

does deal with the question of admissibility of evidence. We recognize that each of the appellate courts has, at times, incorrectly made assertions that by reason of the "dead man's statute" the evidence of a witness concerning transactions or communications with a deceased party was "inadmissible," when the correct holding was, or should have been, that the witness was incompetent to testify concerning them. It is obvious that if a third party having knowledge of the transaction or communication may testify concerning it, as has been held in *Campbell v. Sims,* 161 Ga. 517 (5, 6) (131 SE 483); *Logan v. Logan,* 108 Ga. 760 (33 SE 30); *Ginn v. Carithers,* 14 Ga. App. 298 (3) (80 SE 698); *Atlanta Northern R. Co. v. Brown,* 20 Ga. App. 247 (1) (92 SE 975), and many others, the statute *does not make the evidence inadmissible,* for if it did it would be inadmissible no matter from whence it came; it simply makes certain witnesses incompetent to testify in prescribed situations. Cf. *Crozier v. Goldman,* 153 Ga. 162, 163 (111 SE 666). It is not a rule of evidence, prescribing what may or may not be admitted; it is a rule as to the competency of witnesses to testify. Consequently, such inept assertions found in some of the decisions must yield to the older decisions, and to the terms of the statute itself.

3. In lieu of a transcript of the proceedings there is in the record a stipulation between counsel for the parties that at the hearing on the motion for summary judgment "objection was made by John R. Parks, as attorney for Ulmont Pritchett and Hazel Nadine Pritchett, to the introduction in evidence of the conversations which took place between Ed Bailey, School Superintendent, and Ben H. Strickland, Jr., and further objected to the introduction in evidence of the directive of December 9, 1966, signed by Ed H. Bailey, Superintendent, addressed to principals (Sumter High, Plains, Union) and the letter of August 16, 1967, addressed to Mr. Ben H. Strickland, Leslie, Georgia, signed by Ed H. Bailey, Superintendent, Sumter County Schools, and that the trial judge sus-

tained the objection to the evidence."

It is not stated what the form of the objection was or upon what ground it was made. If it was as to the admissibility of the evidence, the ruling of the trial judge was clearly error, for the evidence specified was pertinent, was not hearsay, was relevant to the issues and had probative value. An objection on the ground of admissibility of the evidence does not raise the issue as to the competency of the witness. *Crozier v. Goldman,* 153 Ga. 162, 163, supra. Nor is an objection that the evidence "seeks to go into transactions with a deceased person," sufficient. *Dickson v. Citizens Bank &c. Co.,* 184 Ga. 398 (6) (191 SE 379).

3. But since the objection to the evidence was sustained and the evidence excluded, and there is exception to its exclusion, we must examine it and determine whether the ruling of the trial judge was correct for any reason. If so, we should affirm; if not, we must reverse.

Assuming that the trial judge construed the objection to be one as to the competency of Mr. Bailey to testify to the specified matters, we conclude that the ruling was error.

(a) This suit is not brought by the personal representative of Johnny Pritchett, but by his father and mother. As between the plaintiffs and the defendant, Sumter County, the suit simply does not come within the ambit of *Code* § 38-1603 (1, 3, 5).

(b) The witness, Ed H. Bailey, is not a party to the action, nor is he a party interested in the result of the suit within the meaning of § 38-1603 (4). It is well settled that within the meaning of this section an "interested party" is one having a *pecuniary* interest—one who stands to gain or to lose—in the result of the litigation. *Lankford v. Holton,* 187 Ga. 94 (8 b) (200 SE 243); *Fortner v. McCorkle,* 78 Ga. App. 76 (1) (50 SE2d 250); *Dean v. Dean,* 13 Ga. App. 798 (80 SE 25). A mere personal interest or bias does not render the witness incompetent to testify.

4. Is Sumter County, or its school district, a corporation within the meaning of § 38-1603 (3)? We have found no

case dealing with this problem. It is provided in Art. XI, Sec. I, Par. I of the Constitution (*Code Ann.* § 2-7801) that each county shall be a body corporate, with powers and limitations as may be prescribed by law and that suits by and against a county shall be in its name. In Art. VIII, Sec. V, Par. I (*Code Ann.* § 2-6801) it is provided that each county, exclusive of independent school districts, shall compose one school district, controlled and managed by the county board of education, and that there shall be a county school superintendent, who shall be the executive officer thereof.

While it may be that the references to corporations in the statute are intended to apply only to commercial corporations, and thus be doubted that the "dead man's statute" applies as against the county or its school board (see *Barnwell v. State Hwy. Dept.*, 108 Ga. App. 335, 339 (132 SE2d 842)), we shall assume, without deciding, that it does apply. Cf. *Langford v. Commissioners of Wilkinson County*, 75 Ga. 502. In that posture Mr. Bailey would be an incompetent witness *as against the representative of the estate of Ben H. Strickland,* but not as against the plaintiffs. *Code* § 38-1603 (7) has that effect. It is to protect the estate of the deceased party, who is a co-defendant, that this portion of the Act was included, as is recognized by the Supreme Court in *Sanders, Swann & Co. v. Allen,* 124 Ga. 684, 685 (52 SE 884) when it asserted, "The Act of 1897, referred to in the second headnote, was primarily designed to prevent the party offered as a witness from deriving any advantage by giving testimony which his deceased codefendent could not contradict." This is made doubly clear by the ruling of the Supreme Court in *Bryan v. Tooke,* 60 Ga. 437, that objection to the testimony on the ground that it related to a transaction or a communication with a party since deceased, now represented by his administrator as a co-defendant in the action, was available only to the co-defendant administrator, and not to the plaintiff. A like holding is to be found in *Cooper v. Reeves,* 161 Ga. 232 (2) (131 SE 63).

It is to be kept in mind that the "dead man's statute" deals only with the *competency* of witnesses to testify, and not with the admissibility of evidence. The evidence given by Mr. Bailey, and to which objection was directed, was admissible and without any peradventure of doubt could not lawfully have been excluded if Strickland were in life. His death makes no change in the posture, or in the competency of Bailey as a witness insofar as the matter stands between the plaintiffs and the county. It does render him incompetent as against Strickland's administrator, and the administrator was entitled to object on that ground to his testifying to these facts and thus to keep it out. But he did not. "[A] person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." *Code* § 102-106. As a party to a suit an administrator may waive, e.g., the twelve months exemption from suit. *Waters v. Hurst,* 12 Ga. App. 248 (77 SE 102); *Emmett & Co. v. Dekle,* 132 Ga. 593 (2) (64 SE 682); *Leath v. Hardman,* 43 Ga. App. 270 (158 SE 453). Failure of the administrator to object on this ground amounted to a waiver of the incompetency of Bailey to testify as against him. "[A] witness offered may be permitted to testify, unless there is an objection or exception distinctly raising the question of his competency. If a witness is altogether incompetent to testify, objection must be taken before the witness is examined at all. If he is competent as to some matters and incompetent as to others, the objection may be taken at the time he offers to testify as to matters concerning which he is incompetent." *Dowdy v. Watson & Lewis,* 115 Ga. 42 (2, 3) (41 SE 266). Accord: *Hall v. Hilley,* 139 Ga. 13 (1) (76 SE 566); *Crews v. Crews,* 174 Ga. 45, 47 (162 SE 107). "The failure to object at the time evidence is offered is a waiver of the objection and this ground of the appeal cannot be considered. *Durrence v. Durrence,* 224 Ga. 620 (163 SE2d 740); *Queen v. Hunnicutt,* 220 Ga. 89 (3) (137 SE2d 45)." *Brown v. State,* 226 Ga. 114, 116 (172 SE2d

666). Thus, plaintiffs being in no position to object on the grounds of competency, and the co-defendant administrator having failed to object, thereby waiving it, and the evidence being pertinent to the issue, relevant and otherwise admissible, it was error to repel it.

5. Do the provisions of the Summary Judgment Act relative to affidavits, etc., as found in *Code Ann.* § 81A-156 (e) require a different result? We think not. True, the statute does provide that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is *competent* to testify to the matters stated therein." (Emphasis supplied). The affidavit and the deposition show on their face competency of Mr. Bailey as against the plaintiffs, and are otherwise in full compliance with this requirement.

6. Tendered and admitted without objection in opposition to the motion for summary judgment was an affidavit from Claude Frazier, the teacher at Union High School who was assigned the duties of driving instructor, in which he asserted that during the school year 1967-68 his principal at the school had been Ben Strickland, and that Strickland was also the head basketball coach and that he (Frazier) had served as assistant coach, that during the fall of 1967 the driver training car was kept overnight at Strickland's residence on the school campus; that it was brought over to the gymnasium in the morning for use during the day in driver training classes, and returned to the Strickland residence in the afternoon; that on some occasions when it did not interfere with the driver training classes Strickland had used the car in going to the Post Office and to do other school-related errands; that Strickland had told him that this was all right since he had an understanding with Mr. Oxford of Oxford Motor Company that he might use the car for those purposes; on other occasions Strickland had used the car in his capacity as basketball coach, and was so using it on the day of the collision in which he was fa-

tally injured, having gone to Albany for participation in the drawing of pairings for a Christmas basketball tournament; and that so far as he (Frazier) was concerned, Strickland's statement that he had permission to use the car was sufficient to authorize his use of it.

Does this affidavit raise an issue of fact for submission to the jury? We think not. Strickland worked for and under the board of education. Reliance upon this affidavit to show that the board of education had knowledge of Strickland's unauthorized use of the car, and thus tacitly consented, is misplaced. At most it shows knowledge on the part of Mr. Oxford of Oxford Motor Company and of Mr. Frazier, neither of whom had any position of authority with the board of education and whose knowledge could not be chargeable to it. Moreover, much of what Mr. Frazier asserts is rank hearsay, or conclusions based thereon, which has no probative value. *Stubbs v. State Farm Mut. Auto. Ins. Co.,* 120 Ga. App. 750, 756 (172 SE2d 441); *Chandler v. Gately,* 119 Ga. App. 513, 517 (167 SE2d 697).

7. It is inescapable that the legal proof before the court demanded a finding that the driver training automobile was not, at the time of the accident, being used with the permission of Strickland's employer and that its use was unauthorized. *Fielder v. Davison,* 139 Ga. 509 (77 SE 618); *Young v. Kickliter,* 213 Ga. 42 (96 SE2d 605); *Chattanooga Pub. Co. v. Fulton,* 215 Ga. 880 (114 SE2d 138); *McIntire v. Hartfelder-Garbutt Co.,* 9 Ga. App. 327 (71 SE 492); *Royal Undertaking Co. v. Duffin,* 57 Ga. App. 760 (196 SE 208); *Hodges v. Seaboard Loan &c. Assn.,* 61 Ga. App. 443 (6 SE2d 133); *Price v. Star Service &c. Corp.,* 119 Ga. App. 171 (166 SE2d 593); *Brown v. Sheffield,* 121 Ga. App. 383 (173 SE2d 891); *Young v. Kickliter,* 213 Ga. 42 (96 SE2d 605). It was therefore error to deny the motion for summary judgment on behalf of Sumter County.

*Judgment reversed. Jordan, P. J., and Hall, P. J., concur. Whitman, J., not participating.*

ARGUED SEPTEMBER 16, 1971—DECIDED NOVEMBER 10, 1971— REHEARING DENIED DECEMBER 17, 1971—

Smith & Hargrove, *William E. Smith,* for appellant.

Myers & Parks, *John R. Parks, George D. Busbee,* for appellees.