HENRY SAMUEL *vs.* WHITE FUEL CORPORATION
(and a companion case[1]).

Suffolk. November 4, 1954. — February 14, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence*, In delivering fuel oil. *Nuisance.*

In actions to recover damages for injuries to the plaintiffs' building and personal property caused by the escape of fuel oil from a break in the top of a basement fuel tank when the defendant delivered oil into the tank, findings that the defendant was negligent or caused a nuisance would not have been warranted by evidence that upon being ordered by the manager of the building to deliver a specific quantity of oil the defendant delivered less than that quantity and made the delivery in the same manner as on three previous deliveries to the building, by pumping the oil from a truck through a rubber hose to a connection on the outside of the building, without entering the building to inspect the tank.

TWO ACTIONS OF TORT. Writs in the Superior Court dated November 7, 1947.

[1] The companion case is by Arthur Haffer against the same defendant.

The actions were tried before *Nagle, J.*, who ordered verdicts for the defendant. The plaintiffs alleged exceptions.

*William S. Monahan*, for the plaintiffs.

*Philander S. Ratzkoff*, for the defendant.

WILLIAMS, J. These are two actions of tort to recover damages for injury to the plaintiff Samuel's building and the plaintiff Haffer's personal property caused by the escape of fuel oil. The premises where the damage occurred consisted of a one story building at 327 Harvard Street, Brookline, owned by Samuel and occupied by Haffer. There were an oil heater and a concrete tank for fuel oil in the basement. On December 2, 1946, one Johnson, who had the management of the building, learned from the janitor that the oil in the tank was low, and ordered the defendant to deliver 3,000 gallons. On the following morning the defendant proceeded to deliver 2,575 gallons which was the capacity of its delivery truck. At the time of delivery the basement was locked and neither the janitor nor Johnson was present. The oil was pumped from the truck through a rubber hose to a connection on the outside of the building. Shortly thereafter a fire was discovered in the basement. It appeared that oil had escaped from a break in the fuel tank, had flowed over the floor and had become ignited in the pit where the heater was located. The break was at the top of the tank and consisted of a circular crack around the vent. This vent was a two and one-half inch galvanized iron pipe, which ran vertically from the top of the tank for three feet, then horizontally to the outside of the building, and from there vertically ten or twelve feet to the edge of the roof. One of its purposes was to permit the escape of air from the tank and thereby to relieve pressure which would be created within the tank when it was being filled with oil. An examination of the vent pipe after the fire by the plaintiffs' expert disclosed that in its horizontal section the pipe was completely blocked by rust and corrosion. This expert testified that the condition could not have been discovered by a simple inspection and that he could verify it only by means of a certain apparatus which he described.

The respective declarations of the two plaintiffs contained similar counts. In each it was alleged in count 1 that the defendant delivered fuel oil in a negligent manner, in count 2 that it used improper machinery and equipment for the delivery, and in count 3 that the negligence of the defendant caused a nuisance to exist on the plaintiff's premises. The trial judge directed verdicts for the defendant on all three counts in each case, and the plaintiffs excepted. The cases are before us on their consolidated bill of exceptions.

It is plain from the testimony of the expert that the break in the tank resulted from the increased air pressure in the tank caused by filling the tank when the vent was blocked. The amount of oil delivered was less than that which had been ordered by the managing agent. Previous to the delivery on December 3, the defendant had made deliveries on October 7, October 23, and November 18. At no time had the defendant's driver entered the basement. The delivery of the oil on the day of the fire was made in the same manner as the prior deliveries. There was no evidence that the method of delivery was improper. It is common knowledge that in the delivery of fuel oil to a building it is customarily pumped from a delivery truck into a basement tank through a pipe or hose to an opening on the outside of the building. Ordinarily there is no occasion to inspect the receiving tank for possible defects. This is not an instance where the order was to fill up the tank, in which case the person delivering the oil might be expected first to ascertain the amount which the tank would hold. Here the order was to deliver a specific quantity of oil given by a person who presumably knew how much was required. We think there was no duty on the driver of the truck to inspect the tank and its vent to ascertain if it was functioning properly. See *Allegretti* v. *Murphy-Miles Oil Co.* 363 Ill. 137; *Fritsch* v. *Atlantic Refining Co.* 307 Pa. 71; *Smith* v. *Pawtucket Gas Co.* 24 R. I. 292. It could not properly be found that his conduct was negligent. We may add that if an inspection had been made there is nothing to show that without a testing apparatus it would have disclosed the in-

ternal condition of the horizontal stretch of pipe where the block occurred.

The plaintiffs derive no advantage in the proof of their cases by alleging that the defendant's negligence caused a nuisance to exist. The act of pumping oil into the receptacle provided to receive it did not in itself create a nuisance. There was no evidence that the truck from which delivery of the oil was made constituted a nuisance on the public way. *Smith* v. *Locke Coal Co.* 265 Mass. 524, 526. The gist of the plaintiffs' causes of action was the defendant's negligence and without evidence of that there was nothing to afford proof of a nuisance. *King* v. *Norcross*, 196 Mass. 373, 375.

*Exceptions overruled.*